THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ARRON L. SNOWDEN, Defendant-Appellant.

Fifth District   No. 5—84—0299

Opinion filed September 17, 1986.

Randy E. Blue, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

764

John R. Clemons, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Vito A. Mastrangelo, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE JONES delivered the opinion of the court:

Defendant, Arron Snowden, was charged in six different cases, consolidated by this court for review, with offenses stemming from a series of home invasions and sexual assaults, which occurred in Jackson County between July 1980 and April 1983. Following bench trials on January 31 to February 2, 1984, and June 28, 1984, the defendant was found guilty but mentally ill of five counts of home invasion, seven counts of rape, two counts of burglary, five counts of deviate sexual assault, two counts of battery and one count of attempted rape. The defendant has appealed from his convictions in these cases, contending that the trial court erroneously applied the amended statute effective January 1, 1984, in finding him guilty but mentally ill (Ill. Rev. Stat., 1983, ch. 38, par. 6—2) so as to violate the constitutional prohibition against *ex post facto* laws (U.S. Const., art. I, sec. 10) and additionally challenging the sufficiency of the evidence of the defendant's sanity at the time of the offenses. We affirm.

The offenses for which the defendant was convicted occurred on six separate occasions, described here in chronological order. In case No. 83—CF—80, the victim was a 27-year-old married woman living with her husband on U.S. Route 51 south of Carbondale. On July 11, 1980, at approximately 2:30 a.m., the victim was home alone, sleeping in her bedroom, when the defendant entered her bedroom, apparently through an unlocked door, and awakened her by putting a sheet over her head. The defendant stated "[Y]ou bitch," and the victim smelled alcohol about the person of the intruder. The victim screamed, and the defendant struck her about the face, bound her hands and feet with cord and raped her. During the rape the victim still had the bedsheet over her head. The defendant then left the premises.

In 83—CF—81 the victim was 20 years of age, unmarried, and resided in a trailer on East Park Street in Carbondale with two female roommates. On May 21, 1982, at approximately 3:30 a.m., she was asleep alone in her bedroom when she was awakened by the defendant, who covered her mouth and threatened to blow her head off if she screamed. The victim felt a gun at the side of her head and heard it being cocked. She was then blindfolded. The defendant removed the victim's clothing and forced her to perform fellatio. The victim's wrists were then tied to the corner of the bed frame. The defendant removed a tampon from the victim's vagina and raped her. The victim

remained blindfolded until the defendant placed a blanket over her head instead and untied her. The defendant then left, stating, "I didn't do it to hurt you, I did it because I hate." The defendant later told the police that he had seen the victim enter her trailer earlier in the day and had gone back to the trailer in the early morning hours "with the intent of raping her."

In 83—CF—82 the victim was a 21-year-old single female living in a trailer on East Park Street in Carbondale, next door to the trailer involved in the events of 83—CF—81. On June 10, 1982, 20 days after the incident of 83—CF—81, at approximately 2:15 a.m., the victim was awakened by the defendant jumping on top of her while she lay in bed. He covered her mouth and choked her. When the victim asked what he wanted the defendant stated, "I don't want anything from you white bitch [sic]." He then struck the victim several times and bound her wrists and ankles. The defendant turned the light on and shined it in the victim's face. He ultimately left the trailer without further interaction with the victim. The defendant later told the police that "he went to the trailer with the intent of raping someone and broke in through a window."

In 83—CF—83 the victim was a 31-year-old single woman who lived in a trailer in Draper Rentals on Pleasant Hill Road in Carbondale. On September 22, 1982, between approximately 2 a.m. and 3 a.m., she was asleep, alone, in her trailer. She was awakened by noises in her living room, and the defendant then entered her bedroom. The victim began to scream, and he told her to shut up. He fondled the victim at gunpoint before blindfolding her. The defendant ordered the victim to remove her clothing and then forced her to perform fellatio on him. The defendant gagged her mouth and bound her with rope. He then raped her. He also located her purse, discovered her name, and threatened to come after her if she told the police about him.

In 83—CF—84, the victim was 20 years of age, unmarried, and resided in Carbondale. On October 13, 1982, while the victim was walking near the campus clock tower, she noticed that a black man appeared to be following her. She eventually began to run, and, as she did so, the defendant yelled, "Stop or I'll shoot you." She stopped, and he grabbed her and covered her mouth. He dragged her a short distance away behind a tree, and they began to struggle. The victim screamed and was hit on the head with a gun. The struggle continued until the defendant ran away as two persons were seen walking in the area. The defendant later told the police that he had pulled the victim into some bushes with the intent to rape her.

In 83—CF—78 the victims were two single women who lived in an apartment duplex on Giant City Road in Carbondale with a young man. On April 28, 1983, at approximately 11 p.m., one of the young women was asleep on the couch in the living room and the other was asleep in the bedroom, while the young man was at work. The first young woman was awakened by a living-room shade going up, and she noticed a man coming in through the window with a jacket over his head to conceal his identity. She asked who it was, and the defendant said, "Shut up bitch or I will kill you." The defendant then put a towel over her face and went into the bedroom. With the jacket still over his face to conceal his identity, the defendant put a knife to the face of the second young woman and ordered her into the living room onto the floor beside the couch. The defendant then blindfolded the second young woman, gagged her and raped her. The defendant next blindfolded and gagged the first young woman. He performed cunnilingus on her and then raped her. The defendant raped both women again. He then tied the second woman up, forced the first woman to perform fellatio on him and then forced her into the bedroom. He began to rape her again, but he heard a car approach the house and stopped. As the young man who lived there opened the door, the defendant attempted to keep it shut. When the young man succeeded in getting in, the defendant said he was leaving and ran out the door, carrying his clothes with him.

The defendant was questioned on May 6, 1983, about the events of 83—CF—78 and made a statement confessing to the crimes committed. Following his arrest the defendant confessed to the offenses of the other cases. A bench trial was held in 83—CF—78, in which evidence was presented by actual testimony, and, in the other cases, evidence was presented in a later trial by stipulation.

The defendant raised the affirmative defense of insanity, and, prior to trial in 83—CF-78, held January 31, 1984, defense counsel orally moved to have the recently enacted amendment to the insanity statute (Ill. Rev. Stat. 1983, ch. 38, par. 6—2(e)) declared unconstitutional. This provision, which became effective January 1, 1984, placed upon the defendant the burden of proving by a preponderance of the evidence that he was not guilty by reason of insanity. Counsel argued that the statute shifting the burden of proof violated constitutional due process and equal protection clauses as well as sections 3—1 and 3—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, pars. 3—1, 3—2). Counsel additionally stated:

"[W]e believe the old burden is adequate that the defendant [sic] present some evidence to overcome the defense of insanity.

\*\*\* [T]he new burden is that the defense prove insanity by the preponderance of the evidence. We believe that this violates due process of law by placing too much burden on the defendant."

The court denied this oral motion and requested that it be resubmitted in written form. A written motion was filed after trial in 83—CF—78 but prior to trial in the other five cases, which stated in pertinent part:

"3. That effective January 1, 1984, Defendant's [*sic*] asserting the affirmative defense of insanity must prove the proposition by a preponderance of the evidence as per the requirements of P.A. 83—288.

4. That Defendant believes that said law violates the Constitution of the State of Illinois, Article I, Section 2.

5. That Defendant believes that said law violates the Constitution of the United States in particular the 5th Amendment due process clause, and the 14th Amendment due process and equal protection clauses.

6. That the Defendant believes said law is contrary to the dictates of Illinois Revised Statute Chapter 38 Section 3—1 and 3—2.

WHEREFORE, Defendant prays this Honorable Court hold P.A. 83—288 unconstitutional."

The trial court denied this motion in the other five cases as it had in 83—CF—78.

Following presentation of the State's case in 83—CF—78, the defendant presented evidence on the affirmative defense of insanity. The defendant's mother testified that the defendant had suffered abuse at an early age as a result of sexual activity of others. The defendant himself testified regarding these early incidents, his experiences in the Navy, his abuse of alcohol and drugs, and his so-called "identity conflict" over his "maleness" and his sexual orientation. The defense presented expert testimony of Dr. Lawrence Richards, a psychiatrist, who stated that the defendant suffered from a "borderline personality disorder," which would manifest itself as depression and intense emotions. Dr. Richards concluded that while the defendant was able to appreciate the criminality of his actions at the time of the offenses in question, he was unable to conform his actions to the law.

The State presented rebuttal testimony of Drs. Peter Heinbecker and D.J. Shoemaker. Dr. Heinbecker, a psychiatrist, testified that the defendant suffered from alcohol and mixed substance abuse, intermit-

tent explosive disorder, and borderline personality disorder. He concluded that alcohol and drug intoxication triggered the defendant's criminal behavior and that the defendant was responsible for that behavior. It was Dr. Heinbecker's opinion that the defendant was not psychotic or psychopathic and that he was legally sane at the time of the offenses in question.

Dr. Shoemaker, a psychologist who had counselled the defendant on a weekly basis from November 1982 to May 1983, testified that the defendant suffered from a severe emotional disorder, not a thought disorder, and, therefore, was not psychotic. He stated that to the extent insane meant psychotic, the defendant was not insane. Both Drs. Heinbecker and Shoemaker testified further, in response to hypothetical questions, that if a police officer had been present during the offenses involved in 83—CF—78, the defendant would not have continued his criminal behavior but would have attempted to flee. This meant to Dr. Heinbecker that the defendant was able to control his behavior so that he would not have continued his criminal activity regardless of the circumstances.

At the close of the evidence the trial court concluded from the expert testimony that the borderline personality disorder suffered by the defendant was an emotional disorder and not a disease or defect. The court discussed evidence of the defendant's controlled acts leading to and during the offenses in 83—CF—78. The court then stated:

> "I am clear in my own mind and I think that the evidence is clear beyond a reasonable doubt one, that Arron Snowden is both sane, and two, mentally ill."

The court found the defendant to be guilty but mentally ill as to the offenses in 83—CF—78 and entered judgment accordingly.

Following trial by stipulated evidence in the other five cases, the trial court similarly found the defendant to be guilty but mentally ill as to those offenses. The defendant filed a post-trial motion in each case, alleging, *inter alia*, that the court had erred in failing to declare the new insanity law unconstitutional and in finding the defendant to be sane. The court denied these motions and, following sentencing hearing, sentenced the defendant to maximum nonextended terms of imprisonment on each offense.

On appeal the defendant contends initially that the court's application of the amended insanity statute, which shifted to the defendant the burden of proving that he was insane at the time of the alleged offenses, constituted a violation of the constitutional prohibition against *ex post facto* laws where the defendant's offenses were committed before the effective date of the amendment. Prior to January

1, 1984, the effective date of the amended statute, when a defendant introduced evidence of insanity, the State was required to prove his sanity beyond a reasonable doubt. (*People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6; *People v. Hollins* (1985), 136 Ill. App. 3d 1, 482 N.E.2d 1053.) Section 6—2(e) of the amended statute, however, provided in pertinent part:

"(e) When the defense of insanity has been presented during the trial, the burden of proof is on the defendant to prove by a preponderance of the evidence that the defendant is not guilty by reason of insanity." (Ill. Rev. Stat. 1983, ch. 38, par. 6—2(e).)

In our recent decision of *People v. Hickman* (1986), 143 Ill. App. 3d 195, 492 N.E.2d 1041, this court rejected the State's assertion that the defendant bore the burden of proving his insanity under section 6—2(e) in a trial commenced after January 1, 1984, where the offenses in question had been committed before that date. We observed that such a shift in the burden of proof would be an *ex post facto* application of the statute if applied in a trial for an offense committed prior to the amendment. See also *People v. Hollins* (1985), 136 Ill. App. 3d 1, 482 N.E.2d 1053.

■ While the defendant here similarly raises the issue of *ex post facto* application of the amended insanity statute, we find no reversible error in the trial of the offenses in question since it appears that the trial court in fact found that the State had proved the defendant's sanity beyond a reasonable doubt as required by the law in effect at the time of the offenses. Despite the court's ruling on the defendant's pretrial and post-trial motions to the effect that the amended statute was not unconstitutional, the court, at the conclusion of the evidence in 83—CF—78, made a specific finding that the evidence was clear "beyond a reasonable doubt" that the defendant was sane. The court thus found the defendant to be sane according to the burden of proof required under the old law rather than that of the amended statute. Since the court considered identical evidence regarding the defendant's sanity in the other five cases, this finding was applicable to those cases as well.

The presentation of evidence at trial on the issue of the defendant's sanity proceeded as under the old law, with the defendant first raising the issue of insanity by the introduction of evidence to overcome the presumption of sanity and the State then presenting rebuttal testimony to prove the defendant's sanity beyond a reasonable doubt. (See *People v. Spears* (1978), 63 Ill. App. 3d 510, 380 N.E.2d 423.) Since the court found that the State had sustained the burden of

proof required under the law in effect at the time of the offenses, we believe that the court properly determined the issue of the defendant's sanity despite its failure to indicate whether it was applying the standard of the old law or the amended statute. We find, therefore, that any error in the court's application of the insanity statute was harmless and accordingly affirm its decision in this regard.

■ The defendant contends additionally that the evidence at trial showed that the defendant was legally insane at the time the offenses were committed and that the court's finding to the contrary was against the manifest weight of the evidence. It is settled that the question of a defendant's mental state at the time of an offense is a matter for the trier of fact, and a determination of sanity will not be reversed unless it is so manifestly against the weight of the evidence as to create a reasonable doubt of sanity or so palpably erroneous as to indicate it was the result of passion or prejudice. (*People v. Hickman* (1986), 143 Ill. App. 3d 195, 492 N.E.2d 1041; *People v. Meeker* (1980), 86 Ill. App. 3d 162, 407 N.E.2d 1058.) A defendant, to be adjudicated insane and thus not criminally responsible for conduct, must, at the time of such conduct, have "lack[ed] substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Ill. Rev. Stat. 1983, ch. 38, par. 6—2(a).

■ While the defendant's expert, Dr. Richards, testified that the defendant, at the time of the offenses in question, was not able to conform his actions to the law, the trial court relied on the contrary opinions of Drs. Heinbecker and Shoemaker, as well as evidence of the circumstances surrounding the offenses, to find that the defendant was able to control his actions so as to be legally sane. The defendant asserts that the trial court's finding must be reassessed by this court because it was based on an erroneous assumption by Drs. Heinbecker and Shoemaker that one must be psychotic to be insane. We need not address the issue raised by the defendant of whether, under Illinois law, psychosis is a prerequisite of insanity, as both Drs. Heinbecker and Shoemaker testified specifically that, at the time of the offenses, the defendant was able to control his actions so as not to be insane under the statutory definition. It is thus immaterial whether, as contended by the defendant, a person might have full control of his faculties so as not to be psychotic and still be insane as unable to control his behavior. We find, therefore, that the trial court's finding of sanity was amply supported by the expert testimony and need not be redetermined as contended by the defendant.

The trial court's determination of the defendant's sanity was like-

wise supported by evidence of the circumstances surrounding the offenses. The facts of each case, which were admitted by the defendant, showed a predominant pattern of deliberate and controlled actions belying the defense of insanity. All of the offenses occurred late at night or early in the morning, and five of the six cases involved females who were asleep. The defendant, in 83—CF—81, had staked out the victim's residence earlier in the day before going back that night to rape her. In 83—CF—78 the defendant drove to the victims' house and used a broken bottle to cut through the window screen after his initial attempt to enter through another window was unsuccessful. The defendant additionally sought to conceal his identity by placing a jacket over his head and, when the man of the house returned home, discontinued his criminal activity and escaped. Similarly, in 83—CF—84, the defendant interrupted his assault and fled when he was about to be discovered.

The defendant was armed in three of the cases, and, in four of the cases, he took the time to tie up the victim and made particular efforts to conceal his identity by blindfolding the victim or placing a covering over her head. In 83—CF—83, moreover, the defendant located the victim's purse to learn her name and threatened her if she identified him to the police.

■ It is settled that evidence of the ability to recall movements and words spoken, and evidence of an attempt to escape are all proper considerations in deciding whether a defendant could conform his conduct to the requirements of the law. (*People v. Roberts* (1979), 71 Ill. App. 3d 124, 389 N.E.2d 596; *People v. Elliott* (1975), 32 Ill. App. 3d 654, 336 N.E.2d 146.) The evidence in the instant case supports the trial court's determination in this regard, and we accordingly find no error in its finding of sanity.

For the reasons stated in this opinion, we affirm the judgment of the circuit court of Jackson County.

Affirmed.

HARRISON and WELCH, JJ., concur.