**UNITED STATES**

v.

**Myesha L. LEWIS, 545 65 1327, Seaman Recruit (E–1), U.S. Navy.**

**NMCM 91 0633.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 16 July 1991.

Decided 30 Dec. 1991.

LT Robert G. Arrambide, JAGC, USNR, Appellate Defense Counsel.

LT R. Byrd, JAGC, USNR, Appellate Government Counsel.

Before STRICKLAND, ORR and MOLLISON, JJ.

MOLLISON, Judge:

We have carefully considered the record of trial, the assignments of error,[1] the Government's reply thereto and the arguments of counsel, and we have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.

## I. Background.

Contrary to her pleas, the appellant was convicted of four counts of wrongfully communicating a threat in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[2] In the appellant's case in extenuation and mitigation, the appellant introduced medical records reflecting that the appellant had been variously diagnosed as having an "adjustment disorder," an "antisocial personality disorder," and an "intermittent explosive disorder." These records also reflect a recommendation for an administrative separation. Other information in the record of trial suggests that at one time the appellant was being processed for an administrative separation. The appellant contends for the first time now that the convening authority committed legal error by referring her case to trial by court-martial, vice processing her for an administrative separation. The appellant also contends that the military judge erred in failing to order an inquiry

into the mental responsibility of the appellant and thereafter to reconsider his findings of guilty. The appellant urges this Court to set aside the findings of guilty or in the alternative order a *DuBay* hearing to determine her mental responsibility. *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

## II. Convening Authority's Discretion in Referral of Charges.

■ Upon the preferring of charges, the proper authority must take immediate steps to determine what disposition should be made of the charges in the interest of justice and discipline. Article 30(b), UCMJ, 10 U.S.C. § 830. Unless his authority has been limited or withheld by superior competent authority, a commander may refer charges to trial by a court-martial which the commander is empowered to convene. Rule for Courts–Martial (R.C.M.) 401(c), Manual for Courts–Martial, United States, 1984. The commander's discretion as to the disposition of charges is *guided* by the policy that charges should be disposed of in a timely manner at the lowest appropriate level of disposition. R.C.M. 306(b). A special court-martial convening authority's discretion to refer charges to trial is *limited* insofar as the convening authority must find or be advised by a judge advocate that there are reasonable grounds to believe that an offense triable by a court-martial has been committed by the accused and that the specification alleges an offense. R.C.M. 404(d), 601(d); *see United States v. Hardin*, 7 M.J. 399, 404 (C.M.A.1979); *United States v. Asfeld*, 30 M.J. 917, 928–29 (A.C.M.R.1990); *United States v. Duncan*, 46 C.M.R. 1031, 1033 (N.C.M.R.1972). Additionally, a special court-martial convening authority may be disqualified to refer charges to trial in a specific case, such as when the convening authority is the accus-

1. I. APPELLANT SHOULD NOT HAVE BEEN COURT–MARTIALED WHEN ADMINISTRATIVE MEASURES WERE MORE APPROPRIATE CONSIDERING HER PSYCHIATRIC DIAGNOSIS.
II. THE MILITARY JUDGE FAILED TO RECONSIDER HIS FINDINGS OF GUILT CONCERNING CHARGE II AND ITS SPECIFICATIONS WHEN THE DEFENSE ENTERED

EXHIBIT B, WHICH INDICATED APPELLANT SUFFERED FROM INTERMITTENT EXPLOSIVE DISORDER.

2. Charge II and four specifications thereunder. The appellant was found not guilty of Charge I and the specification thereunder, willfully disobeying a superior commissioned officer in violation of Article 90, UCMJ, 10 U.S.C. § 890.

er, is junior to the accused, has acted out of bad faith, improper motives or prosecutorial vindictiveness, or has applied improper standards.[3] Article 23(b), UCMJ, 10 U.S.C. § 823(b); R.C.M. 504(c); *United States v. Crossley*, 10 M.J. 376, 378 (C.M.A.1981); *Hardin* at 404; *United States v. Blanchette*, 17 M.J. 512, 514–15 (A.F.C.M.R. 1983). In summary, the choice of charges and forum are entirely within the discretion of the convening authority and are subject to review only for an abuse of discretion. *United States v. Allen*, 31 M.J. 572, 591 (N.M.C.M.R.1990), *aff'd*, 33 M.J. 209 (C.M.A.1991); *United States v. Owens*, 12 M.J. 817, 820 (N.M.C.M.R.1981).

▮▮▮ The exercise of the convening authority's discretion in referral of charges enjoys a presumption of regularity. *Asfeld* at 928–29. There is no requirement for a convening authority to give reasons for referral of charges to trial, vice processing an accused for an administrative separation. *United States v. Charette*, 15 M.J. 197 (C.M.A.1983). Such is certainly the case where, as here, there is no evidence the convening authority was the accuser, acted out of bad faith, improper motives or prosecutorial vindictiveness, or applied improper standards. In any event, the appellant's claim of improper referral is not jurisdictional. *See United States v. Ridley*, 22 M.J. 43 (C.M.A.1986); *United States v. Allen*, 31 M.J. at 584–85. When the facts that give rise to an issue of this nature are known by the accused at trial, the issue must be raised at trial in order that the record may be fully developed, appropriate findings entered and action taken. If the accused does not choose to complain at trial, the accused waives the issue on appeal. R.C.M. 905(b), 905(e); *Allen*, 31 M.J.

at 585. Here, there is no evidence the convening authority abused his broad discretion in referring the charges to trial by special court-martial. The appellant did not object at trial to referral of the charges to a special court-martial. The facts relied upon by the appellant to object to referral were known by the appellant at trial. She cannot now be heard to complain on appeal. Finally, the record independently supports the convening authority's judgment to have these charges tried by special court-martial.[4]

### III. Mental Responsibility.

The appellant contends that the medical evidence she offered in extenuation and mitigation obliged the military judge *sua sponte* to order an inquiry into her mental responsibility and thereafter to reconsider his findings of guilty. As noted earlier, the evidence in the appellant's case in extenuation and mitigation tended to show that she was diagnosed as having an "adjustment disorder," an "antisocial personality disorder," and an "intermittent explosive disorder." The appellant focuses on the ultimate disorder. The essence of the appellant's claim in this respect, as embellished in oral argument, is that the appellant does not know what the term "intermittent explosive disorder" means and therefore the findings ought to be set aside or a *DuBay* hearing ought to be ordered to find out.

### 1. The Standard in Federal Criminal Proceedings other than Trials by Court–Martial

Prior to 1984, the elements of the insanity defense in federal criminal proceedings had been defined by case law, not by statute. The initial insanity test was the

---

**3.** Referral on the basis of race, religion or national origin would be an example of "improper standards." *See United States v. Means*, 10 M.J. 162, 165 (C.M.A.1981).

**4.** The appellant cites *United States v. Cowan*, 13 M.J. 906, 909 (N.M.C.M.R.1982), in support of the proposition that a convening authority must resolve charges through the administrative discharge process, vice trial by court-martial. *Cowan* does not stand for such a proposition. *Cowan* concerned the appropriateness of a sentence to a bad-conduct discharge. In *Cowan*

this Court observed that an accused who does not merit a bad-conduct discharge for the offenses for which the accused has been convicted, should not be awarded a bad-conduct discharge simply as an administrative expedient. *Cowan* does not limit the convening authority's discretion in the disposition of charges, and *Cowan* should not be read to signify that an accused may assert a right to processing for an administrative discharge in preference to referral of charges to trial by court-martial. No such right or preference exists.

"right-wrong" test.[5] The "right-wrong" test was supplemented by the "irresistible impulse" test, also called the "control" test or "volitional" test.[6] S.Rep. No. 225, 98th Cong., 1st Sess. 223–29, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3405–11. In 1984, Congress enacted the Insanity Defense Reform Act.[7] That law codified the defense of lack of mental responsibility in federal criminal proceedings other than courts-martial. The new federal statutory standard is very much like the original "right-wrong" test. Notably the new federal standard eliminated the irresistible impulse-control test. S.Rep. 225 at 225, 1984 U.S.Code Cong. & Admin.News at 3407. Specifically, the Insanity Defense Reform Act provides:

> It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality of or wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

18 U.S.C. § 17(a).

The Insanity Defense Reform Act did not define the term "severe mental disease or defect." The Act's legislative history, however, reflects that the "concept of severity was added [to the legislation] to emphasize that non-psychotic behavior disorders or neuroses such as 'inadequate personality,' 'immature personality,' or a pattern of 'antisocial tendencies' do not constitute the defense." S.Rep. 225 at 229, 422, 1984 U.S.Code Cong. & Admin.News at 3182, 3411, 3559; *see* Sutherland, Stat. Const. §§ 49.04, 48.06, 59.08 (4th Ed). The Act placed the burden on the defendant to prove the defense. 18 U.S.C. § 17(b). Finally, the defense may be waived in federal criminal prosecutions if it is not asserted in a timely manner at trial. *E.g., Scarborough v. United States,* 683 F.2d 1323, 1325 (11th Cir.1982), *reh'g denied,* 690 F.2d 907, *cert. denied,* 459 U.S. 1220, 103 S.Ct. 1225, 75 L.Ed.2d 460 (1983); *United States v. Caplan,* 633 F.2d 534, 539 (9th Cir.1980); Fed.R.Crim.P. 12.2.[8]

### 2. The Standard for Trials by Court–Martial

For many years the defense of lack of mental responsibility has been recognized in military law.[9] Today, military law still accords a "preferred rating" to questions affecting an accused's sanity. *United States v. Massey,* 27 M.J. 371, 373 (C.M.A. 1989); *United States v. Norton,* 22 U.S.C.M.A. 213, 218, 46 C.M.R. 213, 218 (1973). In 1986, Article 50a, UCMJ, 10 U.S.C. § 850a, was added to the Code by Congress in order to apply the same standards in the Insanity Defense Reform Act to prosecutions under the UCMJ.[10] S.Rep.

---

**5.** "To establish a defense on the ground of insanity, it must be clearly proved that, at the time of committing of the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong." M'Naghten's Case, 10 Cl. & F. 200, 8 Eng.Rep. 718 (H.L.1843).

**6.** Later still, the insanity test was modified and became known as the American Law Institute (ALI) standard or "cognitive-volitional" test: "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity to appreciate the criminality of his conduct or to conform to the requirements of the law." Model Penal Code, § 4.01 (Proposed Official Draft 1962). S.Rep. No. 225 at 224, 1984 U.S.Code Cong. & Admin.News at 3406. The ALI standard was adopted by the U.S. Court of Military Appeals in 1977. *United States v. Frederick,* 3 M.J. 230 (C.M.A.1977).

**7.** Insanity Defense Reform Act of 1984, Pub.L. No. 98–473, 98 Stat. 2057 (codified at 18 U.S.C. § 17 (1988)).

**8.** Federal law also prescribes procedures for the examination of criminal defendants who are believed to lack mental responsibility for their alleged crimes or the mental capacity to stand trial. 18 U.S.C. §§ 4241, 4242, 4244.

**9.** Prior to 1977, the standard applicable to trials by court-martial was prescribed by the President in the Manual for Courts–Martial. The test was the right-wrong/irresistible impulse-control test. Paragraph 120, MCM, 1969 (Rev.). In 1977, the U.S. Court of Military Appeals adopted the ALI/cognitive-volitional standard for trials by courts-martial. *Frederick,* 3 M.J. at 237–38.

**10.** Military Justice Amendments of 1986, tit. VIII, § 802, National Defense Authorization Act for Fiscal Year 1987, Pub.L. 99–661, 100 Stat. 3905 (1986).

No. 331, 99th Cong., 2d Sess. 1, 249, *reprinted in* 1986 U.S.Code Cong. & Admin.News 6413, 6444. Article 50a is virtually identical to the Insanity Defense Reform Act.[11] Like the Insanity Defense Reform Act, Article 50a eliminated the irresistible impulse-control test. Likewise, it placed the burden of establishing the lack of mental responsibility on the accused. Article 50a(b); R.C.M. 916(k)(3)(A). Article 50a also does not define the term "severe mental disease or defect." On 3 March 1987, the President amended R.C.M. 706(c)(2)(A) to define the term "severe mental disease or defect" not to include "an abnormality manifested only by repeated criminal or otherwise antisocial conduct, or minor disorders such as nonpsychotic behavior disorders and personality defects."[12]

■ Congress has granted the President authority to prescribe pretrial, trial, and post-trial procedures. Article 36, UCMJ, 10 U.S.C. § 836. Accordingly, R.C.M. 701(b)(2) obliges the accused to give notice of intent to rely on the defense of lack of mental responsibility before beginning the trial on the merits. The defense of lack of mental responsibility is litigated on the merits and not as an interlocutory question. R.C.M. 916(k)(3)(C). Thus, evidence of the accused's lack of mental responsibility, like all other exculpatory evidence, should be introduced before findings and not during the accused's case in extenuation and mitigation. Evidence relating to any mental impairment or deficiency of the accused, not amounting to a lack of mental responsibility, may be considered by the court-martial during the presentencing proceedings. R.C.M. 1001(f). Like other affirmative defenses, the defense of lack of mental responsibility is subject to the rule of waiver. R.C.M. 905(e).

The standards and procedures for conducting mental examinations of accused servicemembers are also set forth in the Rules for Court–Martial. Specifically, R.C.M. 706(a) provides:

> If it appears to any ... military judge ... that there is reason to believe that the accused lacked mental responsibility for any offense charged ... that fact and the basis of the belief shall be transmitted through appropriate channels to the officer authorized to order an inquiry into the mental condition of the accused.

R.C.M. 706(b) provides that a military judge may order such an inquiry after referral of charges. R.C.M. 706(c) provides by whom the mental examination will be conducted, the matters to be inquired into, the process to be followed in reporting the results of the examination, and to whom those results may be disclosed. Additional mental examinations may be directed at any stage of the proceedings as circumstances may require. R.C.M. 706(c)(4).

■ The military judge has a duty to order *sua sponte* an R.C.M. 706 inquiry into the mental responsibility or mental capacity to stand trial whenever there is reason to believe the accused lacked mental responsibility for the offenses or lacks mental capacity to stand trial. R.C.M. 706(a), 706(c)(4), 909; *see United States v. Grembowicz*, 17 M.J. 720, 722 (N.M.C.M.R. 1983), *pet. denied*, 18 M.J. 101 (C.M.A. 1984); *United States v. Dotson*, 9 M.J. 542, 544 (C.G.C.M.R.1980). Mere assertions of insanity by an accused do not trigger the obligation to order an R.C.M. 706 inquiry. *Grembowicz*, 17 M.J. at 722. When evidence giving the military judge reason to believe that the accused lacks mental responsibility comes to the military judge's attention after findings have been entered,

---

11. "It is an affirmative defense in a trial by court-martial that, at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of the acts. Mental disease or defect does not otherwise constitute a defense." Art. 50a(a), UCMJ, 10 U.S.C. § 850a(a).

12. Exec. Order No. 12,586, 3 C.F.R. 205–06 (1987–88). This executive interpretation of the term is consistent with the legislative histories of both acts and with definitions applicable to previous mental responsibility standards. *Frederick*, 3 M.J. at 234; ¶ 120*b*, MCM, 1969 (Rev.). It is entitled to deference and will be applied by us. *See* Sutherland, Stat. Const. § 49.05 (4th Ed.). The alleged offenses occurred in May and June of 1990.

the ordering of an R.C.M. 706 board should precede any reconsideration of those findings.

 The military judge's duty to order, *sua sponte,* an R.C.M. 706 inquiry and the rule concerning the waiver of the defense of lack of mental responsibility may be reconciled in this fashion: Issues concerning an accused's mental capacity to stand trial or to conduct or cooperate intelligently in appellate proceedings are not waived. If matters are introduced at trial that would give the military judge reason to believe the accused lacked mental responsibility for the offenses warranting the ordering of an R.C.M. 706 inquiry or if the defense is raised by the accused, the defense is not waived. If, however, nothing was presented at trial warranting the ordering of an R.C.M. 706 inquiry and the defense is not raised by the accused, the defense is waived and may not be asserted for the first time on appeal.

 When a substantial question is raised concerning an appellant's mental responsibility or mental capacity, this Court, likewise, may order an R.C.M. 706 inquiry. The R.C.M. 706 inquiry would precede the ordering of a rehearing, and this Court would not order a rehearing unless the results of the sanity board give us reason to believe that at the rehearing the factfinder would be persuaded to accept the accused's affirmative defense. *Massey* at 374; R.C.M. 1203(c)(5). We, therefore, acknowledge our authority to order post-trial hearings and R.C.M. 706 inquiries; however, we will not order such proceedings unless there is evidence of record justifying it or matters which we may properly note. As the burden is upon the appellant to raise and establish the defense, we believe the appellant has the burden of coming forward with evidence or authority that warrants relief of the nature she requests.

### 3. Application

 We turn, then, to consider whether the evidence in this case gave the military judge reason to believe the appellant lacked mental responsibility or raises a substantial question on appeal concerning the appellant's mental responsibility, thus warranting an R.C.M. 706 inquiry. We have taken note of the matters of record, the law respecting the insanity defense, the *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders,* 3d Ed. Revised 1987 (DSM–III–R), and the decisions of other courts that have dealt with "intermittent explosive disorder."

"Intermittent explosive disorder" is classified as an "impulse control disorder not elsewhere classified." DSM–III–R at 321. The impulse-control test has been abandoned as a test for mental responsibility. Nothing in the DSM–III–R suggests that intermittent explosive disorder is anything more than a "nonpsychotic behavior disorder." We have been cited no federal case authority indicating that intermittent explosive disorder is a "severe mental disease or defect." State courts have treated intermittent explosive disorder as a nonpsychotic disorder and not amounting to insanity. *People v. Wiley,* 185 Ill.App.3d 1097, 133 Ill.Dec. 907, 914, 541 N.E.2d 1345, 1352 (1989); *People v. Snowden,* 147 Ill.App.3d 763, 101 Ill.Dec. 288, 291, 498 N.E.2d 612, 615 (1986). We further note that Defense Exhibit A reflects the appellant was without psychosis and was psychologically fit for duty. Defense Exhibit B reflects the appellant's mental status examination revealed no "thought disorder." From what the appellant has presented us and what we have noted, intermittent explosive disorder does not appear to be a "severe mental disease or defect" within the meaning of Article 50a. In summary, we find nothing that would have prompted the military judge to order an R.C.M. 706 inquiry. Nor has anything been presented to us raising a substantial question concerning the appellant's mental responsibility or otherwise warranting our ordering of an R.C.M. 706 inquiry. We conclude from the evidence that the appellant has a volatile personality and without remorse abused her shipmates and superiors to get her way. It is this kind of a state of mind that courts-martial are intended to correct.

In the case at bar, no notice of intent to assert a defense of lack of mental responsibility is attached to the record and we presume no such notice was given. Rather, trial defense counsel elected to employ the medical records in the appellant's case in extenuation and mitigation during the presentencing proceedings. Trial defense counsel argued that the medical diagnoses augured for an administrative resolution of appellant's case. Specifically, he argued that the appellant should have been removed from the ship and administratively discharged before any of the offenses occurred. Trial defense counsel also stated that "the fact that [the appellant's personality disorders] didn't give rise to a defense today is no reason not to consider them in extenuation and mitigation." Record at 46. From this argument it is apparent the trial defense counsel contemplated the defense of mental responsibility and concluded the evidence was only pertinent in extenuation and mitigation. R.C.M. 1001(f)(2)(B). The defense of lack of mental responsibility was expressly not raised. There is no claim the appellant was denied effective assistance of counsel.[13] We presume the trial defense counsel discharged his duties faithfully and took steps to inform himself whether the defense would lie. He obviously concluded that it did not. Under the circumstances of this case, the defense of lack of mental responsibility was waived and may not be asserted for the first time on appeal.

It is true that a court-martial composed of a military judge sitting alone, like a court-martial composed of members, has the power to reconsider a finding at any time before the announcement of sentence.[14] Article 52(c), UCMJ, 10 U.S.C. § 652(c); R.C.M. 924(c); *United States v. Chatman,* 49 C.M.R. 319 (N.C.M.R.1974). The military judge, however, was not requested to reconsider his findings and there was nothing brought to his attention that warranted it.

The findings of guilty and sentence, as approved on review below, are affirmed.

Senior Judge STRICKLAND and Judge ORR concur.

---

**13.** Nor do we find any basis for a claim of ineffective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**14.** In order that a court's fact-finding function may be carried out in an orderly, informed manner, it is imperative that all facts pertaining to the accused's guilt or innocence be presented to the court *before* it is called upon to decide the issue. An accused is entitled to one trial on the merits, not two. *United States v. Tobita,* 3 U.S.C.M.A. 267, 12 C.M.R. 23 (1953); *United States v. Colvin,* 46 C.M.R. 1276, 1277–78 (A.F.C.M.R.1973). The latter would occur if a court-martial is *required* to reconsider its findings based on evidence the accused chooses to

reserve until the presentencing proceeding. The potential mischief such a rule might spawn is patent. *See United States v. Sexton,* 28 C.M.R. 775, 779 n. 3 (A.F.B.R.1959). Accordingly, it has been held that in a contested case an accused who has elected to remain silent during the findings phase of the trial may be prohibited from testifying in the presentencing procedure as to matters that are inconsistent with the findings of guilty. *Tobita,* 12 C.M.R. at 26–27. On the other hand, once such inconsistent matters have been introduced in the presentencing procedure and the military judge undertakes to instruct the members on reconsideration, the military judge must do so correctly. *Colvin* at 1278; *Sexton* at 781.