**UNITED STATES**

v.

**Thomas Richard WHITT, Jr., 249 04 6764, Machinist's Mate Fireman (E-3), U. S. Navy.**

**NCM 79 1930.**

U. S. Navy Court of Military Review.

Sentence Adjudged 27 June 1979.

Decided 29 Aug. 1980.

CAPT E. A. Burnette, USMC, Appellate Defense Counsel.

LT Wm. Eric Minamyer, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C. J., and BAUM and SANDERS, JJ.

CEDARBURG, Chief Judge:

In his sole assignment of error, appellant argues that the military judge erred by permitting the members to cross-examine appellant on his unsworn statement. Although we do not see an actual cross-examination of the accused by the court, and although we do perceive error in the procedure utilized by the military judge in his resolution of a difficult situation, we believe that the defense counsel voluntarily waived this issue when he offered to and in fact did amend and supplement the accused's unsworn statement.

Appellant pled guilty at a general court-martial to one violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880, concerning the attempted theft of a pair of trousers, two violations of Article 121, UCMJ, 10 U.S.C. § 921, concerning the consummated thefts of, in one instance, $2,675.00 worth of camera equipment as well as $80.00 in currency and, in the other, of a camera and cassette tapes worth $590.00, and one violation of Article 134, UCMJ, 10 U.S.C. § 934, concerning his unlawful entrance into a barracks room with intent to commit larceny. His pleas having been determined provident, findings of guilty were entered and, once the officer members were subjected to voir dire and sworn, the presentencing stage of the trial began. The Government's evidence in aggravation consisted of one exhibit, a stipulation of fact concerning appellant's conviction of two civilian offenses committed one year prior to this court-martial. In extenuation and mitigation, the defense presented testimony from two former supervisors and entered into evidence four stipulations of expected testimony from four other former supervisors, favorable entries from the accused's service record, and a handwritten unsworn statement from the accused.

Just prior to arguments on sentence, however, the following·trialogue took place between one of the court members, Lieutenant W, the military judge and the individual military counsel:

LT W: Sir?

MJ: Yes, LT W.

LT W: I have some questions regarding defense exhibits.

MJ: What is the question? You may ask the question.

LT W: The first question is, "Was restitution made for the $80.00 and the broken camera?"

MJ: Would you restate the question?

LT W: Was restitution made for the $80.00 and the broken camera?

MJ: Does the defense desire to present any evidence, any further evidence on that?

IMC: Your honor, this is not going to be a satisfactory answer. We have no evidence. We can answer the question, but we have no evidence to present. It will be in the nature of an offer of proof.

MJ: If you were to make an offer of proof with regard to that question, what would it be?

IMC: Your honor, the offer of proof would be that no restitution has been made.

(R.85–86). Thereafter, in an attempt to put this.information in evidentiary form at the invitation of the trial counsel, an oral stipulation was presented to the court; however, Lieutenant W's confusion was apparent, and an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session was called into session by the military judge.

It was at that session that trial counsel began to object to the "cross–examination" of the accused by the court in contravention of paragraph 75c, *Manual for Courts–Martial, 1969 (Rev.)* (MCM).[1] The defense proposed that the unsworn statement be amended to answer the question; several

times, however, in response to the military judge's inquiry the individual military counsel refused to say without equivocation that this approach was completely voluntary; the following portions of the record are pertinent:

IMC: We are assuming at this point that the question arose from the accused's unsworn statement. I can't imagine where else it would have come out of the defense exhibits.

MJ: LCDR J, are you aware that the defense does not have to offer any evidence or make further unsworn information to answer that question and if there is no further information forthcoming it simply will not be answered.

IMC: I understand that, your honor, but the point now I think is that if we don't come forward, we're answering the question . . . the accused is going to be damaged. I think we're . . . almost have to clarify this isue [sic].

. . . . .

MJ: LCDR J, is it the defense's position that the defense does not have to offer any evidence or further information with regard to the question and simply refuse to answer.

IMC: Under the stated law that is correct. However, I think in the current posture, the question has been asked and some evidence–not evidence, but some information has been put before the member who asked the question and I would think now we have almost an obligation to go forward.

MJ: You feel then it is in the accused's best interest to provide further information, if such information is available.

IMC: In this set of circumstances I think he almost has to. To come back now and instruct the members that the question should not have been asked in the first place, places the accused, I think, in a

---

1. It was taken by the litigants as well as by the military judge as without doubt that the following passage from the accused's unsworn statement was the only information before the court which could have prompted Lieutenant W's

question: "I believe the only items taken and not recovered were a camera that I broke and thru [sic] away and the 80 dollars. The rest was recovered." Defense Exhibit W.

very precarious position. It almost appears he is hiding information.

.    .    .    .    .

MJ: Do you see any psychological prejudice if this question is not answered at this time?

TC: Well, there are many times when the members are—ask questions and have to be told that there is some reason why that question is not permissible. The reason is simple enough, that an individual cannot be cross—examined on an unsworn statement. The fact is the accused did not make restitution so how could LT W think any worse of him if he knew than if he didn't know the answer? I don't think the accused will be prejudiced.

MJ: LCDR J, do you still desire to offer an additional unsworn statement?

IMC: I think LT F's point might be well taken if in fact the question hadn't been answered to some degree already. Now the member has asked for clarification. I mean—if we are going to cut if off now, I think that will damage the accused.

MJ: I intend to allow the defense to reopen his case and present an additional unsworn statement, however, I do intend to give this instruction to the members. The instruction is as follows: LT W, and other court members, if your question relates to Defense Exhibit W, that is the accused's unsworn statement, as it certainly appears to be, you are advised that an accused cannot be cross—examined on an unsworn statement and that fact cannot be held against him in any way. However, in this case the defense has reopened his case and desires to offer an additional oral unsworn statement by the accused. I also intend to give the standard unsworn statement instruction to the members at the time I instruct them on sentencing. Would that procedure be satisfactory to both sides?

TC: No objection, sir.

IMC: Your honor, I have no real problem with the basic—we were not going to and did not intend to ask for an unsworn statement instruction. As a matter of fact we will oppose the request from the government to do that.

.    .    .    .    .

TC: Sir, the government would request, for the record, that the military judge inquire of the defense whether their position is that this is in effect cross—examination of the accused on an unsworn statement, which is impermissible or whether they think that the question is proper. The answer to that question, it is submitted, should be established for the record before we proceed further.

MJ: LCDR J, what is your position with regard to the questions posed by the government?

IMC: Your honor, I don't think there is any question that the question of LT W is cross—examination or if you want, is questioning the accused on the unsworn statement. The problem is as you articulate is that the question was asked and was answered to a degree and now is before the members and they are confused, or at least one is confused. It has got to be clarified or the accused is going to suffer.

MJ: Does the defense regard the question posed by LT W as a question that can be refused to be answered?

IMC: Well, of course, we are all operating on assumption that LT W is basing this question on the unsworn statement. If in fact he is, yes, it could be something that could be refused to be answered. Now, I don't know that that is what he is basing his question on. I have to assume that it is.

MJ: Despite the fact it is a question that does not have to be answered, is the defense voluntarily reopening the case to provide additional unsworn information to, in effect, answer the question?

IMC: We are reopening our case, or are requesting to reopen our case, to provide and to clarify the answer already before the court.

(R.87–88, 90, 91, 92). Lieutenant W's question was finally answered orally, by the individual military counsel, who stated:

IMC: . . . The accused, through counsel, will make the following statement to be considered in conjunction with Defense Exhibit W. "I have not personally made restitution for the broken camera. It was covered by insurance and the owner has had the camera replaced. I have made no restitution for the eighty dollars."

(R.93).

The military judge thereafter asked if any member of the court had any additional questions. Lieutenant W was permitted to inquire why a magazine article on career reenlistment objectives was included as evidence; he was told by the individual military counsel that that would be covered in argument. The judge then permitted Lieutenant W to ask another question, without having ascertained the nature of the question; Lieutenant W asked "why is the statement here by Fireman Whitt he feels he lost his third class crow because of this?" (R.94). The individual military counsel promptly offered that "that will also be covered in the argument;" trial counsel, nonetheless, continued her assertion that this questioning was improper as cross–examination. After discussion during an Article 39(a) session, 10 U.S.C. § 839(a), a stipulation of fact was entered into as to the reasons behind appellant's failure to be promoted; this exhibit, however, was marked, over trial counsel's further objection, at the direction of the military judge as Defense Exhibit X.[2]

Defense Exhibit X was published to the members. Once again, however, the judge inquired generally of the members as to whether there were any further questions;[3] this time the judge instructed the members to write out the questions. These questions were: (a) "Was the recovered property in the possession of the accused and if not, where?"[4] Appellate Exhibit XVII; (b) "What rumors caused the fiancee to break engagement and was there any truth in them? When was the engagement broken?"[5] Appellate Exhibit XVIII; and (c) "Why are there no evaluations after the period 31 July 1978?" Appellate Exhibit XIX. The military judge recessed the court overnight so that both parties would have an opportunity to consider the matter.

The next morning, the following colloquy occurred immediately upon the session being called to order:

MJ: Before proceeding any further, with regard to the handling of the questions by the court members, posed in Appellate Exhibits XVII, XVIII, and XIX, I need some information. LCDR J, with regard to the questions from the court members at the last session of the court, which were apparently triggered by the accused's written unsworn statement, that is, Defense Exhibit W, was it clear to the defense at the time that these questions did not have to be responded to because there is a right not to be cross–examined on an unsworn statement?

IMC: Are you referring to the questions that have been answered?

MJ: That is correct.

IMC: Your honor, at the time we were well aware that we were not legally obligated to respond to those questions.

(R.96).

2. The following colloquy is relevant:
MJ: Is it the defense's desire to mark it as its own exhibit or not?
IMC: We are more than willing to offer it as our own exhibit. The question was addressed to the defense.
MJ: LT F, what is the reason you desire to offer the stipulation as a prosecution exhibit?
TC: Because the question is not properly addressable to the defense. The question cannot be asked of the defense because it is cross–examination on the unsworn statement of the accused.
MJ: The objection is overruled. Mark it as defense exhibit next in sequence.

3. One member had two questions, "both relating to the accused's statement that was submitted in evidence;" another member had a question relative to performance evaluations.

4. *See* note 1, *supra.*

5. The accused, in his unsworn statement, had said that: "While the ship was in Bath I broke up with my fiancee, because of rumors from a friend back home. After this I started drinking heavily." Defense Exhibit W.

MJ: Did you freely respond because you thought it was in the accused's best interest to do so because of possible prejudice to the accused if the information was not provided?

IMC: Yes, sir.

(R.99–100). With that, the Government proposed to answer the question pertaining to recovery of the property through testimony from the police detective who conducted the search and who was present outside the courtroom, and to answer the question pertinent to the accused's evaluation history by way of a stipulation of fact marked as a prosecution exhibit. The defense agreed with a stipulation of fact, so marked, to answer the latter issue but suggested that the questions concerning the recovered property and the rumors be answered by way of an "additional unsworn statement." (R.100). The military judge permitted the defense to respond by way of reopening the unsworn statement, but with the following caveat:

MJ: With regard to responding to the other questions posed in the other two appellate exhibits, I will allow the defense to proceed as it stated that it would, however, I do intend to give this instruction to the members prior to that occurring. The instruction is as follows: Members of the Court, some of the questions you have posed at the last session of court which have been responded to or are yet to be responded to appear to have been related to information contained in the accused's unsworn statement. You are advised that an accused as a matter

of law cannot be cross-examined about information contained in an unsworn statement. In other words, an accused has an absolute right to remain silent in this regard and his silence cannot be held against him in any way by the court, however, in this case the defense has voluntarily reopened its case to offer additional information. Does either side have any objection to that instruction or any proposed instruction that should be given? [6]

Over trial counsel's objection, the Government was not permitted to present the detective's testimony in satisfaction of paragraph 54b, MCM; the military judge did not explain, apparently satisfied that the defense's answers would clarify the member's questions.[7] Shortly thereafter, the judge once again inquired generally of the panel whether there were any further questions; there being none, the court was recessed so that instructions could be prepared.

Once the court member indicated that he had an inquiry "regarding defense exhibits" the military judge should have immediately questioned the member to determine whether the inquiry concerned the unsworn statement. If the inquiry did not concern the statement, then it would have been better practice for the military judge to have requested, as an additional measure of caution, that the question be put in writing and presented to the judge for inspection and consideration in view of paragraph 54b, MCM. If, however, the inquiry was prompted solely by the unsworn statement,

---

**6.** (R.101). This instruction was given. (R.104).

**7.** The response to those questions is as follows:
DC: *In response to your question posed by Appellate Exhibit XVII, Fireman Whitt through his counsel makes the following statement: Except for two cameras and the eighty dollars the remaining items were recovered from my room. One camera broke when I dropped it and I threw it away. It was not recovered. The other camera was loaned out and subsequently recovered when I informed the authorities where the camera was located. In response to Appellate Exhibit–the question posed in Appellate Exhibit XVIII, Fireman Whitt makes the following*

statement through his counsel: *The rumors were that my fiancee, Francine Norman, who was then and is now attending college majoring in special education, was seeing other men and going out nightly. Believing that, I broke off our engagement in late May, and we did not get back together again until mid–November. Once we know what is to happen to me here today, a wedding date will be set. The rumors turned out not to be true.* Both of those statements are to be considered in conjunction with Defense Exhibit W and the oral statement which was presented yesterday.

(R.104–105).

as it appears here, and could be answered only by the accused, the court should have been instructed by the military judge that as a matter of law an accused could not be "cross–examined" by the court, pursuant to paragraph 75c, MCM.

It appears to us that in this case there were several junctures at which the defense counsel could have, had he desired, chosen to exercise on the accused's behalf the right of insulation from cross–examination on an unsworn statement. The military judge did err when he permitted the member orally to ask the initial question concerning restitution, he erred when he thereafter turned to the defense and inquired as to whether the defense desired to present any evidence on that question,[8] and he further compounded these errors by continuing to invite questions from the court members. Defense counsel could have objected to even addressing the issue, citing paragraph 75c, MCM, but, given insight into the void area of the defense case at least as far as one member was concerned, and apparently desiring to be as open as possible on behalf of his client, he instead chose to answer, by way of an "offer of proof," that "no restitution was made." We conclude that his "offer of proof" and his subsequent desire to reopen his case in extenuation and mitigation to supplement the unsworn statement in response to other inquiries prompted by the statement were made with full understanding of paragraph 75c, MCM, especially considering his acknowledgment of that fact and his advocation throughout the re-

mainder of the presentencing stage of the trial that the members' inquiries be addressed. *See United States v. Richardson*, No. 71 0992 (N.C.M.R. 30 June 1971) (unpublished).

 It must be underscored that an accused cannot be cross–examined, directly or indirectly, *see United States v. Denny*, No. 76 2298 (N.C.M.R.1976) (unpublished), on his unsworn statement. *See United States v. Wells*, 13 U.S.C.M.A. 627, 33 CMR 159 (1963); *United States v. Royster*, 43 C.M.R. 468 (A.C.M.R.1970). The military judge should ensure that the accused's rights are protected; however, this is not to say that given a situation as the one before us an accused cannot elect, through his attorney, to forego the *Manual's* protection and present additional information by way of further unsworn testimony or otherwise. Therefore, taking the record and the proceedings as a whole, we are unable to find that appellant suffered any substantial prejudice.

Accordingly, the findings and sentence as approved below are affirmed.

Judge BAUM and Judge SANDERS concur.

---

8. Even at this point an instruction could have been given which we believe would have protected the accused had he chosen not to amplify the "offer of proof."