UNITED STATES

v.

**Philip K. COWAN, 528 04 1058, Operations Specialist Third Class (E–4), U. S. Navy.**

**NMCM 82 0647.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 24 Aug. 1981.

Decided 21 June 1982.

Before SANDERS, Senior Judge, and BOHLEN and MICHAEL, JJ.

MICHAEL, Judge:

This case is before us without specific assignment of error, the accused having waived appellate representation. At trial, he had been sentenced to a bad-conduct discharge, confinement at hard labor for 90 days, forfeitures of $330.00 pay per month for three months, and reduction in rate to pay grade E–1, following his pleas of guilty to charges of a four-and-one-half-month unauthorized absence and missing ship's movement through design. The absence offense had been terminated by surrender. During presentencing, the accused adamantly maintained his wish for a bad-conduct discharge, stating that he had "no desire to remain and work for the Navy . . . ." He indicated,

further, his complete understanding of the stigmatizing consequences of such a discharge. No other matters were presented in extenuation and mitigation. The accused had a previously unblemished disciplinary record. The convening authority approved the sentence as adjudged, but pursuant to a pretrial agreement, suspended confinement at hard labor in excess of 30 days for nine months from the date of trial. The supervisory authority followed suit.

The following information—not otherwise appearing in the record of trial—was revealed in the convening authority's action:

A request for Humanitarian Transfer submitted by Petty Officer Cowan incident to the death of his father on 17 December 1980, was apparently mishandled, resulting in the request not being acted upon prior to the USS HULL (DD 945) deployment on 27 February 1981. Petty Officer Cowan became convinced that the paperwork for his request had been deliberately misplaced. Believing the welfare of his minor brother and sister jeopardized, who at their fathers [sic] death were without adult supervision, and due to the complexity of the father's estate, Cowan deliberately left the ship the evening before the deployment, surrendering to military control 4½ months later, on 13 July 1981.

Petty Officer Cowan's adult family was either unable or unwilling to assume guardianship of his minor brother and sister. The children had been living with the father in Las Vegas, Nevada prior to his death, and had demonstrated behavior which if left unmonitored would likely result in their involvement with juvenile authorities. Petty Officer Cowan was the sole adult to evidence a willingness to provide the guidance they required.

Cowan attempted unsuccessfully to obtain a self-negotiated swap in order to remain in the San Diego area and hence reach a compromise solution to the dual problems of supervision for his minor siblings and administration of his late father's estate, of which Cowan was execu-

tor. In a parallel action, Cowan submitted a request for Humanitarian Transfer that inadvertently was misplaced; the error remained undiscovered until the day prior to the ship's deployment.

The size of the father's estate was also a consideration in Cowan's decision to become an unauthorized absentee. The complexity of the probate proceedings ensured that the family interest would suffer significantly in Cowan's absence.

In mitigation, up to the time he became an unauthorized absentee, Cowan had an unblemished conduct record. He was a highly trusted Petty Officer.

█ Inasmuch as these matters were not brought forth at trial and the accused has not been afforded an opportunity to comment thereon (as was also stated in the convening authority's action), we must consider this information in the light most favorable to the accused. We assume, therefore, that this statement is factual, including the subjective characterization of some of its objective elements. In so doing, we observe that these extenuating and mitigating circumstances cast the accused's offenses and his subsequent negative attitude in a wholly different light from that which emerges from the bare-bones record.

In the instant case, we see a 22-year-old petty officer of "highly trusted" repute within his command who experienced a personal tragedy in the death of his father, coupled with the need to provide proper guardianship for a minor brother and sister. We must assume from the convening authority's statements that the accused was the only responsible adult available to assume such a charge. Further complicating the accused's situation, although alone not usually a basis for humanitarian reassignment,[1] was his appointment to the fiduciary responsibility of administering his father's estate, apparently an estate of substantial size and complexity which "would suffer significantly in Cowan's absence."

In an effort to resolve the conflicting demands placed upon him by military duty and family responsibility, the accused attempted to "work within the system" by seeking a "self-negotiated swap" and requesting a humanitarian transfer. The swap did not materialize. We do not presume to speculate what the outcome of Cowan's request for a humanitarian transfer (or possible discharge) would have been, but relief of this nature was foreclosed to him when his command "apparently mishandled" the request, resulting in its not being acted upon prior to the ship's departure on a WESTPAC deployment. The request for humanitarian reassignment was "inadvertently ... misplaced; the error remained undiscovered until the day prior to the ship's deployment." That the accused attempted to find a proper solution for his dilemma until the last moment is bolstered by the contemporaneous occurrence of the commencement of his absence and the ship's movement.

█ If concepts of leadership within the naval service and responsibility of command authorities for the welfare of their assigned personnel mean anything, they must at least stand for a concern for administrative due process by forwarding legitimate, authorized official requests in a timely manner and for rendering assistance—within applicable service regulations—to individual service members in their efforts to resolve honest difficulties. It would appear that the accused received no such consideration. It is unfortunate that busy offices and scarce administrative assets (we do not know that such is the case here, but are willing to surmise) result in burdensome workloads where paperwork "gets lost in the shuffle." The disabilities that flow from such circumstances, however, legitimately cannot be borne by the individual service member who seeks administrative relief.[2]

1. *Enlisted Transfer Manual* (NAVPERS 159 09C), Chapter 18.

2. Under no circumstances are we to be understood as condoning the accused's actions in absenting himself without authority and missing ship's movement. No matter how well mo-

It is not surprising that the accused evinced a negative attitude at his court-martial.[3] We are convinced that it was this attitude and his express desire for a bad-conduct discharge, alone, which prompted the military judge to award Cowan such a punishment. "The accused's desire for such a discharge cannot transform an inappropriate sentence into a just penalty, if his record and offenses do not warrant a punitive discharge." *United States v. St. Ann*, 6 M.J. 563, 564 (N.C.M.R.1978). A punitive discharge should not be used as a substitute for rehabilitative measures or, if appropriate, an administrative discharge. *United States v. Wilson*, No. 81 3349 (N.M. C.M.R. 22 March 1982) (Gladis, S. J., concurring/dissenting); *United States v. Browder*, No. 77 1019 (NCMR 22 June 1977).

In light of the offenses of which the accused stands convicted, his prior excellent disciplinary record, and the extenuating matter before us, we find a sentence which includes an unsuspended bad-conduct discharge and reduction to the lowest enlisted pay grade to be inappropriately severe. Accordingly, we affirm the findings and only so much of the sentence as provides for forfeiture of $330.00 pay per month for three months, reduction in rate to pay grade E–3, and confinement at hard labor for 90 days, of which that portion in excess of 30 days shall be suspended for a period of nine months from the date of trial as directed by the convening authority.

Senior Judge SANDERS and Judge BOHLEN concur.

---

tivated, "self-help" of this nature represents a clear violation of military law, and disciplinary action appropriately may be taken. Thus, the accused's pleas were certainly not improvident.

**3.** We make no comment on trial defense counsel's decision not to bring these matters to light during the sentencing portion of the trial. We are confident that this omission was prompted by his client, who, with what he thought was a "good" pretrial agreement limiting confinement, was unwilling to risk any explanation or appeal which might have resulted in his retention in the Navy.