**UNITED STATES**

**v.**

**John C. CLAYTOR, 494 72 2846, Mess Management Specialist Seaman, Apprentice (E–2), U.S. Navy.**

**NMCM 91 2255.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 17 June 1991.

Decided 6 March 1992.

LtCol J.R. Roe, USMCR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before JONES, REED and LAWRENCE, JJ.

LAWRENCE, Judge:

Pursuant to his pleas, appellant was found guilty of a failure to go to his appointed place of duty, disrespect towards a commissioned officer, and failure to obey a lawful order from a superior petty officer, in violation of Articles 86, 89, and 91, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 889, and 891. He was sentenced by the military judge to a bad-conduct discharge, forfeiture of $500 pay per month for one month, reduction to pay grade E-1, and confinement for 35 days. The convening authority approved the sentence without modification.

Appellant initially assigned five errors,[1] to which the Government responded. After our initial examination of the record, we specified two additional issues to be briefed by the parties,[2] and we have carefully considered those submissions.

 In his first assignment of error, appellant contends that the military judge erred by failing to establish during the providence inquiry that appellant's disrespectful words were not said during a pure-

Maj G.S. Warner, USMC, Appellate Defense Counsel.

1. I. THE MILITARY JUDGE FAILED TO ESTABLISH DURING THE PROVIDENCE INQUIRY INTO CHARGE II AND ITS SPECIFICATION THAT THE DISRESPECTFUL LANGUAGE ALLEGED WAS NOT PART OF A PURELY PRIVATE CONVERSATION.
II. THE MILITARY JUDGE FAILED TO ESTABLISH DURING THE PROVIDENCE INQUIRY INTO CHARGE III AND ITS SPECIFICATION ALLEGING DISOBEDIENCE OF THE ORDER OF AET2 BOTHWELL TO "REMAIN SILENT", WHETHER SUCH ORDER WAS A SUFFICIENTLY SPECIFIC LAWFUL ORDER RELATING TO A MILITARY DUTY, WHETHER APPELLANT ACTUALLY DISOBEYED THE ORDER, AND WHETHER AET2 BOTHWELL ABANDONED HIS RANK BY USING THE WORDS "SHUT UP."
III. CHARGE III AND ITS SPECIFICATION, ALLEGING WILLFUL DISOBEDIENCE OF THE ORDER OF A PETTY OFFICER, SHOULD BE DISMISSED IN THAT IT FAILS TO ALLEGE AN OFFENSE.
IV. APPELLANT DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL WHERE THE OFFENSES FOR WHICH APPELLANT WAS CONVICTED WERE MINOR IN NATURE AND COUNSEL FAILED TO OFFER EVIDENCE OF APPELLANT'S AWARDS AND DECORATIONS.
V. A SENTENCE OF A BAD CONDUCT DISCHARGE IS INAPPROPRIATE UNDER THE FACTS AND CIRCUMSTANCES SURROUNDING APPELLANT'S CASE.

2. I. DOES THE PROVIDENCE INQUIRY REGARDING CHARGE I PROVIDE A SUFFICIENT BASIS FOR A FINDING OF GUILTY?
II. IF CHARGE I IS SET ASIDE, IS A BAD CONDUCT DISCHARGE AN APPROPRIATE SENTENCE?

ly private conversation. A "mere possibility of conflict between a guilty plea and the accused's statements" is an insufficient basis for rejecting a guilty plea, *United States v. Logan,* 22 U.S.C.M.A. 349, 47 C.M.R. 1 (1973); in order for pleas to be set aside on appeal as improvident, the record must contain some evidence in "substantial conflict" with the guilty pleas. *United States v. Stewart,* 29 M.J. 92, 93 (C.M.A. 1989), citing *United States v. Hebert,* 1 M.J. 84, 86 (C.M.A.1975). The providence inquiry need not establish the nonexistence of every conceivable defense in the absence of evidence that is in substantial conflict with the guilty plea. In this case, appellant's responses during the inquiry establish that appellant made his statement to a second class petty officer in the master-at-arms spaces on board USS MIDWAY (CV-41). Appellant stated that his division officer, a chief warrant officer W-2 who was not present, "could act like an asshole sometimes." The reaction of the petty officer—an immediate order to appellant to "shut up"—amply demonstrates that appellant and he were not buddies engaged in a private conversation. Because nothing said or raised by appellant at trial suggests that his disrespectful words were said in private, the first assignment of error is without merit.

■ In the second assignment of error, appellant contends that the providence inquiry fails to establish that the order to "shut up" related to a military duty to do or not do a specific act, that appellant disobeyed the order, and that the petty officer issuing the order had not abandoned his rank or position of authority by giving the order in those terms. We conclude that an order to "shut up" from a superior petty officer immediately on the heels of disrespectful language by a subordinate towards a superior commissioned officer, given to preclude additional disrespectful language, is a specific order relating to the maintenance of good order and discipline. An order to "shut up" is a specific mandate to cease speaking and say nothing further. Appellant admitted at trial that he did not shut up. After receiving the order, he related that he went on to say, "If you'd

ask me to be quiet, I would do that. But shut up is rude." Saying anything but perhaps "aye, aye" or "yes, petty officer [B]" is, under these circumstances, a violation of the petty officer's manifestly clear order.

As to the contention that appellant's responses during the providence inquiry did not establish that the petty officer had not abandoned his rank and position of authority, we reiterate again that an otherwise provident plea will be overturned only if matters presented by the accused at trial are in substantial conflict with his guilty pleas. In this case, appellant specifically stated during the inquiry that the petty officer had not abandoned his rank or position. Second, the petty officer had a duty to take effective action to preclude additional disrespectful language, and his choice of language was well within appropriate bounds in the Naval Service. Petty officers are not required to emulate "Miss Manners" when giving orders to undisciplined subordinates, and more than mere rudeness is required to relieve a subordinate of his obligation to obey an otherwise lawful order. Nothing said by appellant at trial or any other matter raised by the defense required the military judge to cover this issue at all, much less more fully; accordingly, this assignment of error is without merit.

■ Charge III and its specification allege that appellant, having received a "lawful order," did thereafter "willfully disobey" that order. Those averments are sufficient to embrace all elements of the offense by implication, *see United States v. Bryant,* 30 M.J. 72, 73–74 (C.M.A.1990); accordingly, the third assignment of error is without merit.

■ Regarding trial defense counsel's failure to introduce evidence of appellant's awards and decorations, we note first that appellant sat next to his defense counsel when that counsel declared that appellant was "wearing all the awards, ribbons and decorations to which he's entitled." Record at 2. Presumably, the military judge saw them on appellant's uniform and

knew what they represented. Additionally, appellant's enlisted performance record and his enlisted performance evaluation report for the period 5 May 1990 to 31 January 1991 establish his entitlement to wear the National Defense Service Medal. These exhibits also strongly imply his award of the Sea Service Deployment Ribbon and Southwest Asia Service Medal since they show that he was attached to USS MIDWAY from 31 July 1990 to 3 May 1991 during which time MIDWAY deployed to the North Arabian Sea and the Persian Gulf in support of Operation Desert Shield/Storm. Finally, we note that appellant's awards are not for personal valor or achievement, rather they were received only for service at a particular time and place. Because it is apparent that appellant suffered no prejudice from his counsel's failure to introduce evidence of these awards that do not evidence personal valor or recognition of personal accomplishment, the fourth assignment of error is without merit.

■ Putting aside the fifth assignment of error for the moment, after considering the specified issues and the responses of the parties, and after repeated examination of the providence inquiry relating to Charge I and its specification, we find that appellant's pleas of guilty to Charge I and its specification lack an adequate factual basis. Appellant stated that he regularly awoke by hearing reveille or by an alarm clock that he set the night before as a precaution in case reveille did not wake him. On the morning in question, he failed to awake. He indicated that he had knocked his alarm clock from his rack, apparently involuntarily while sleeping, and it had fallen to the floor and did not sound. At one point in the inquiry, appellant stated that he took all reasonable precautions to awake on time. Following a recess, appellant said he could not account for the failure of reveille to wake him except to suggest that the failure resulted from his sleeping only six hours the preceding night rather than his ordinary eight hours. It is unclear from the inquiry why he slept only six hours on this one occasion. Appellant's statement that he took all rea-

sonable precautions to awake on time raised the defense of inability to perform his duty, see Rule for Courts–Martial (R.C.M.) 916(i), Manual for Courts–Martial, United States, 1984, however, his additional responses did not provide an adequate factual basis for concluding that his failure to awake was due to his own fault. The findings of guilty to Charge I and its specification are set aside and dismissed.

■ In his fifth assignment of error, appellant contends that we should set aside the bad-conduct discharge approved on review below generally because of the allegedly minor nature of the offenses of which he is convicted. After considering the general reasons for award of a court-martial sentence, see United States v. Ohrt, 28 M.J. 301, 305 (C.M.A.1989), we decline to do so.

First, appellant justly deserves a severe punishment for these two offenses. Flagrant disregard of the basic, universal standard of respect due a military superior should be deemed a significant offense in any professional naval force—the offense is even more intolerable when it takes place on board a naval combatant such as USS MIDWAY. Appellant appeared in court with six nonjudicial punishments to his discredit. Not surprisingly in light of the charges in this case, four of these nonjudicial proceedings involved disrespect to superior officers or petty officers, and all punishments took place on USS MIDWAY. His disciplinary record shows that he understood what constitutes disrespectful language. Appellant simply did not care that his words were detrimental to good order and discipline.

Second, the evidence establishes beyond any doubt appellant's lack of rehabilitative potential. Minor disciplinary measures had been tried and had failed on six previous occasions as a result of nonjudicial punishment. Appellant committed the offenses before this Court with full knowledge that disciplinary action would likely result, yet he spoke anyway. We cannot imagine what more his command could have done to correct his thoroughly unacceptable behav-

ior. The evidence proves that appellant is simply unamenable to discipline.

Third, the preservation of good order and discipline requires that appellant receive a significant punishment, including separation from the Naval Service with a discharge certificate that accurately reflects the character of his performance and actions. Those servicemembers who know of appellant's disciplinary history and these offenses, especially those who have been personally affected by his disrespect and insubordination, must be assured that the commission of military offenses carries a substantial penalty, otherwise their respect for the disciplinary system and their adherence to high standards of personal performance and behavior may be affected adversely.

Lastly, the deterrence of similar offenses by others is not only a proper reason in and of itself for awarding appellant a significant punishment, but that deterrence is essential to the preservation of good order and discipline. In this case, we conclude that only a sentence that includes a bad-conduct discharge carries an adequate deterrent effect to bring home to other potentially recalcitrant sailors the potential punishment that may flow from their commission of similar offenses.

These general considerations underlie the longstanding principle that a bad-conduct discharge is "appropriate for an accused who has been convicted repeatedly of minor offenses and whose punitive separation appears to be necessary." R.C.M. 1003(b)(10)(C). Appellant asserts, however, that his record indicates that he has had "a difficult time adjusting to the military" and that additional rehabilitative measures or an administrative discharge should result from the offenses before this Court.

Appellant, and the dissent to our opinion, point to the maxim of *United States v. Cowan*, 13 M.J. 906, 909 (N.M.C.M.R.1982) that a punitive discharge should not be used as a substitute for rehabilitative measures or to separate an accused who is unsuitable for military service and therefore should be given an administrative discharge. As we note above, rehabilitative measures were tried and failed many times prior to this court-martial. We perceive that appellant's adjustment difficulties are more properly described as a personal commitment to frequent unruliness and insubordination and his rejection of basic standards of military behavior and conduct. His unsuitability for continued service results from willfulness and a lack of commitment to basic military standards, not from some indelible and largely uncorrectable character disorder. Appellant signed an enlistment contract and entered onto active duty. He was trained and sent to the fleet. Although the Navy could at its option have administratively discharged appellant prior to his court-martial, it was in no way obligated to do so. A sailor has no right to earn an administrative discharge by repeatedly committing offenses, no one of which would alone warrant punitive separation. Appellant owed the Navy his allegiance, commitment, and obedience, and the Navy had every right to demand that he meet his service obligation or face serious punishment.

Reassessing the sentence in accordance with *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990) and *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), we conclude that an unsuspended bad-conduct discharge is appropriate for appellant and these offenses. Accordingly, the findings of guilty of Charges II and III and their specifications and the sentence, as approved on review below, are affirmed.

Judge REED concurs.

JONES, Senior Judge (concurring and dissenting):

There is no doubt that appellant was both a malcontent and irritant to the command. In short, he was a disciplinary recidivist as reflected in the chronology of his six masts. Equally clear to me is the measured, and more than fair, nonjudicial punishment imposed at the consecutive masts.[1]

---

**1.** No correctional custody was ever imposed and only with the sixth and final mast was confine-

ment on bread and water ordered.

My focus, however, is on the appropriateness of the bad-conduct discharge for the instant offenses. After setting aside the failure to go offense, we are left with disrespect to a commissioned officer and willful disobedience of the order of a second class petty officer, concededly serious offenses on their face.

Appellant admitted saying to the petty officer, "This is bullshit, man. This guy [appellant's division officer, a chief warrant officer W–2, not present when the remark was made] can act like an asshole sometimes." This constituted the disrespect. When the petty officer then told appellant to "shut up," appellant responded, "If [you would] ask me to be quiet, I would do that," and then explained that "shut up" was "rude." Appellant said nothing else, but the willful disobedience of the order to remain silent was not complete.

Appellant's evaluation dated 31 January 1991 (RE 1), after listing appellant's first four masts, notes prophetically:

MSSA Claytor's appearance is fair, however, his personal behavior is unsatisfactory. MSSA Claytor needs to work on his attitude and needs to make a decision as to what he wants to do in life. He has the potential to become a very good Mess Management Specialist. At this time, MSSA Claytor is progressing toward advancement.

As is apparent, appellant chose the wrong course, resulting in two additional masts and the charges before this special court-martial. In the absence of the prior masts, I know of no line officer who would have taken the instant charges beyond mast. On the other hand, I have no quarrel with the disposition of the instant charges at special court-martial given those same masts; indeed, I am surprised that appellant did not find himself at a special (or summary) court-martial earlier than he did.

Our function, however, is to pass on the appropriateness of sentence for the two offenses before us in the context of this appellant. Although we are often apt to label those earlier masts as "matters in aggravation," as was done here, they do not aggravate the present offenses as they are not circumstances that directly relate to or result from the commission of those offenses. They are indicative of a lack of rehabilitative potential, and well justify the conclusion that the words spoken in disobedience were said in a malicious manner, and certainly not in the interest of promoting courtesy. In another case, prior masts might well justify the decision to increase the length of confinement in the effort to break what otherwise might become a series of military offenses, in order to return a disciplined and productive sailor to the fleet. But we must hesitate before engrafting those earlier offenses onto ones that are otherwise relatively minor in order to characterize them as "bad conduct" for the purposes of discharge, a punishment unrelated to any interest in rehabilitation.

That appellant does not belong in the service, I have no doubt; however, the lesson of *United States v. Browder*, No. 77–1019 (N.C.M.R. 22 June 1977), as reformulated in *United States v. Cowan*, 13 M.J. 906, 909 (N.M.C.M.R.1982) bears repeating:

The harshness of a punitive discharge should not be utilized as a substitute for rehabilitative measures or, if an accused is unsuited to military service, elimination through administrative means.

Although I agree with the majority's treatment of the findings, I would disapprove the bad-conduct discharge as inappropriately severe as to these offenses, notwithstanding appellant's poor disciplinary record.

The command's legitimate interest in the expedient removal[2] of the individual from the service may not be considered in the determination to adjudge a punitive discharge. Military judges all too frequently find themselves being asked by the servicemember in "BCD striker" cases, and by the Government in cases involving multiple in-

2. Appellant was served with his copy of the charges, entered into his pretrial agreement, and was tried all on the same day.

stances of minor military breaches, to exercise the power to discharge an accused. The judge may often feel as if the court-martial setting has been transformed into that of an administrative discharge board. In both scenarios military judges must resist the temptation toward expediency and adjudge the punitive discharge only in those cases in which they believe it truly to be just.