**UNITED STATES**

v.

**Michael T. EVANS, 579 92 0014, Personnelman Seaman Apprentice (E–2), U.S. Navy.**

**NMCM 92 0515.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 15 Oct. 1991.

Decided 28 Aug. 1992.

---

Lt Randall L. Chambers, JAGC, USNR, Appellate Defense Counsel.

Cdr W.F. Shields, JAGC, USN, Appellate Government Counsel.

Before JONES, REED and LAWRENCE, JJ.

LAWRENCE, Judge:

Appellant pled guilty to three specifications of unauthorized absence terminated by apprehension and one specification of missing the movement of his ship through neglect, in violation of Articles 86 and 87, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886 and 887. He was sentenced by the military judge to confinement for 75 days, forfeiture of $300 pay per month for 2 months, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence

but suspended confinement in excess of 30 days, an action more favorable than that required by the pretrial agreement that called for suspension of confinement in excess of 60 days.

The case is before us for review pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(c), without assignment of error. Upon review of the record, we note three issues that merit comment and resolution: (1) do appellant's factual responses during the providence inquiry provide an inadequate factual basis for his plea of guilty to the aggravating factor of apprehension regarding the second specification of unauthorized absence; (2) did the military judge err in his extensive questioning of appellant following appellant's request for a discharge from the service during the sentencing portion of the trial; and (3) did the military judge unduly emphasize appellant's request for a discharge in deciding to adjudge a bad-conduct discharge? We answer each question in the affirmative but conclude that the findings, with modification, and the sentence, as approved on review below, should be affirmed.

## Providence of Guilty Plea

█ Regarding the second specification of unauthorized absence of about 7 weeks terminated by apprehension, appellant stated during the providence inquiry that the absence terminated when he was arrested by civilian authorities for an undetermined offense. He said that two days after the arrest and after the charge was dropped, "the Navy came to the courthouse and picked [him] up and brought [him] back to the Eisenhower." In response to a question from the military judge, appellant said that he had not discussed this apprehension with his counsel. He and counsel then conferred in court.[1] After this brief conference, the military judge inquired whether defense counsel felt that the facts met the requirements for an apprehension, and defense counsel said that they did. This ended the inquiry concerning the element of apprehension.

█ The essence of a termination of an unauthorized absence by apprehension is an involuntary return to military control. *United States v. Fields*, 13 C.M.A. 193, 32 C.M.R. 193 (1962); *United States v. Nickaboine*, 3 C.M.A. 152, 11 C.M.R. 152 (1953). If the unauthorized absentee is apprehended by civilian authorities for the unauthorized absence, the absence is terminated by apprehension. Manual for Courts–Martial (MCM), United States, 1984, Part IV, ¶ 10(c)(10). Further, if the absentee is apprehended for civilian charges and the civilian police discover his status other than from the absentee or someone acting on his behalf, the absence is terminated by apprehension. If, however, the accused is apprehended for civilian charges and is thereafter made available for pick-up by military authorities, the absence may nonetheless be terminated by surrender if the absentee or someone acting on his behalf voluntarily discloses his status and requests return to military authorities, unless the disclosure is made to avoid civilian prosecution. *United States v. Washington*, 24 M.J. 527 (A.F.C.M.R.1987).

█ In this case, appellant's statements do not provide a factual basis to establish the element of apprehension. An accused's acknowledgement of guilt based on a subjective belief that his conduct is criminal is insufficient to support his plea of guilty. His responses must set forth factual circumstances that objectively establish his guilt. *United States v. Chambers*, 12 M.J. 443 (C.M.A.1982); *United States v. Davenport*, 9 M.J. 364 (C.M.A. 1980); *United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247 (1969). The military judge did not determine how the civilian police learned of appellant's status as an

1. Very often an accused is nervous and confused during the providence inquiry and simply forgets portions of his discussions with his counsel. If, however, defense counsel had not discussed the facts and circumstances surrounding this alleged apprehension with his client, an in-court conference was not the place to do so.

This decision should make clear that defense counsel must determine all the salient facts surrounding his client's return to military control after apprehension by civilian authorities in order to competently advise his client regarding the advisability of entering a plea of guilty that admits this aggravating factor.

unauthorized absentee. Instead, he relied on trial defense counsel's statement that the facts supported appellant's plea. Trial defense counsel's opinion may not substitute for an accused's recitation of facts to support the guilty plea. *See United States v. Timmins*, 21 C.M.A. 475, 45 C.M.R. 249, 252–53 (1972); *United States v. Advincula*, 29 M.J. 676, 677 (A.F.C.M.R.1989). Accordingly, that portion of the finding of guilty of specification 2 of Charge I that finds that the absence was terminated by apprehension is set aside and dismissed.

### Questioning Regarding Request for Bad–Conduct Discharge

During his unsworn statement in the sentencing portion of the trial, appellant stated that he was aware that a bad-conduct discharge was the only type of discharge the court could adjudge. In addition, he said that he understood the long-term effects of such a discharge and that it was unlikely the discharge would be upgraded. After acknowledging that such a discharge could affect his ability to obtain government and private employment, he requested that the court "award [him] a discharge."

The military judge then declared that he was reopening the "providenc[e] inquiry with regard to the providency of the accused's tacit request for a bad conduct discharge." He followed by asking numerous questions delving into appellant's ability to adjust to military life and his understanding of the effects of a bad-conduct discharge in receiving benefits from several government agencies or in joining labor unions or groups such as the American Legion and the Veterans of Foreign Wars. He also asked how long appellant had desired a bad-conduct discharge and whether his mind had changed in this regard. In response to a question concerning what appellant intended to do after leaving the Navy, appellant said that he would work with his brother's trucking company removing garbage.

Continuing, the military judge asked if he had discussed the adverse effects of a bad-conduct discharge with his counsel, and appellant said that he had. He then asked, "Has [trial defense counsel] or anybody else tried to talk you out of this bad conduct discharge request?" Appellant responded, "Well, [trial defense counsel]'s been telling me that it would not be in my best interest, sir." The military judge concluded his questioning by asking if appellant could complete his enlistment contract, to which appellant replied that he was not sure. He then found that appellant's pleas continued to be provident and that the request for a bad-conduct discharge was made by appellant with a full awareness of his rights and of the adverse consequences of it.

█ We find this inquiry to be error in several respects. A request for a punitive discharge, made in the sentencing portion of the trial, does not involve the providence of a guilty plea, therefore, *Care* and its progeny provide no basis or reason for reopening the providence inquiry following it. We conclude that the military judge was concerned with the providence of appellant's request for a bad-conduct discharge, that is, that the request was made with adequate contemplation and understanding of its consequences.

█ No decisional authority requires a military judge in every case in which the accused requests a punitive discharge to question the accused at length about his understanding of the myriad of consequences that flow from receipt of the punitive discharge. Generally, if trial defense counsel argues that a punitive discharge is appropriate, the military judge must question the accused *if* it appears that this concession does not comport with the accused's desires or the accused does not understand the ramifications of it. *United States v. McNally*, 16 M.J. 32, 33 (C.M.A. 1983) (and cases cited therein); *United States v. Volmar*, 15 M.J. 339, 343 (C.M.A. 1983); *United States v. Butts*, 25 M.J. 535, 537 (A.C.M.R.1987); *United States v. Kadlec*, 22 M.J. 571, 572–73 (A.C.M.R.1986). This questioning need not be extensive. *McNally* at 35 (Cook, J. concurring). In cases in which the award of a punitive discharge is virtually certain and it appears that defense counsel's concession in argu-

ment is patently reasonable, no inquiry by the military judge is required even if the accused has not affirmatively stated his desire for a punitive discharge. *Volmar* at 343; *United States v. Robertson*, 17 M.J. 846, 848 (N.M.C.M.R.), *petition denied*, 19 M.J. 7 (C.M.A.1984); *United States v. Adams*, 17 M.J. 604, 607–09 (N.M.C.M.R. 1983), *petition denied*, 17 M.J. 315 (C.M.A. 1984); *United States v. Deifer*, 30 M.J. 1038, 1039–40 (A.C.M.R.), *petition denied*, 32 M.J. 247 (C.M.A.1990); *United States v. Worrell*, 3 M.J. 817, 823–24 (A.F.C.M.R. 1977). Certainly, the better practice in this latter eventuality is for the military judge to conduct a brief inquiry to ensure that the accused agrees with his counsel's concession.

 Before the military judge began his questioning in this case, appellant had already stated that he understood the long-term effects of requesting a bad-conduct discharge. Defense counsel is presumed in the absence of evidence to the contrary to have fulfilled his duty to fully advise his client regarding all important aspects of the trial. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Davis*, 20 M.J. 61, 65 (C.M.A.1985); *United States v. Thomas*, 33 M.J. 644, 646 (N.M.C.M.R.1991); *United States v. Evans*, 31 M.J. 927, 930 (A.C.M.R.1990); *cf. United States v. Blunk*, 17 C.M.A. 158, 37 C.M.R. 422 (1967). Nothing that had occurred in the trial suggested that trial defense counsel had not discharged his pretrial duties. Appellant had unequivocally requested a discharge that he knew could only be a bad-conduct discharge, and his counsel had yet to argue on an appropriate sentence. At this point in the trial, there was no reason for the military judge to question appellant at all about his request for a bad-conduct discharge.

 The military judge's questioning went into appellant's ability to adjust to military life, his intentions for employment after leaving the Navy, and his likelihood of completing his enlistment. Even had there existed a reason for any inquiry, these questions bear only remotely on ap-

pellant's understanding of the consequences of requesting a bad-conduct discharge and resulted in information being obtained by the sentencing authority that the defense apparently did not desire to include in appellant's unsworn statement. In even the limited circumstances discussed above when some inquiry must be made following a request for a punitive discharge, a military judge should only ascertain the accused's understanding of the consequences of requesting a bad-conduct discharge and his desires in this regard: the reasons for and wisdom of doing so are for the accused and his counsel. By ranging far afield of any legitimate inquiry into the providence of the bad-conduct discharge request, the military judge's inquiry was tantamount to questioning appellant on his unsworn statement. We reiterate again "that an accused cannot be cross-examined, directly or indirectly, on his unsworn statement." *United States v. Whitt*, 9 M.J. 953, 968 (N.C.M.R.1980); *see United States v. King*, 12 C.M.A. 71, 30 C.M.R. 70 (1960); R.C.M. 1001(c)(2)(C).

 Additionally, in questioning appellant about his conversations with his counsel and the nature of counsel's advice regarding the request for a bad-conduct discharge, the military judge intruded upon privileged communications between client and counsel. *See* Rule for Courts–Martial (R.C.M.) 502(d)(6), Discussion (B); Military Rule of Evidence (Mil.R.Evid.) 502(a), (b)(4). The military judge, trial counsel, and the public have no right to learn defense counsel's confidential advice to his client concerning the merits or wisdom of requesting a bad-conduct discharge simply because an accused requests one at trial. Defense counsel's personal opinion about the merits of requesting a punitive discharge is irrelevant to his client's understanding of the effects of a punitive discharge or stated desire to receive one.

In so concluding, we have reexamined our own decision of *United States v. Beckwith*, 12 M.J. 939 (N.M.C.M.R.), *petition denied*, 15 M.J. 64 (C.M.A.1982); because its general thrust if not its holding may be contrary to this decision. In *Beckwith*, tri-

al defense counsel elicited a statement from the accused, who earnestly requested a bad-conduct discharge, that requesting a bad-conduct discharge was contrary to counsel's advice. In finding no error in eliciting this information, this Court concluded that the tactic was intended to show the sentencing military judge that the request was serious and made after careful consultation with counsel. The Court concluded that if placing this information on the record had "the additional result of protecting the counsel from future allegations of ineffectiveness," that effect did not amount to a competing or conflict of interest between counsel and his client. 12 M.J. at 941.

We agree that placing such information before the sentencing authority *may* show that the request is serious and made after adequate contemplation. Doing so may, however, have an opposite effect. Defense counsel generally is older than the accused, has a substantially better education, and has a more complete understanding of the consequences of receipt of a punitive discharge. In providing professional advice concerning the advisability of requesting a punitive discharge, defense counsel must consider all aspects of the case, including the maturity and emotional state of his client. Information that defense counsel, after careful consideration of all pertinent facts and circumstances, advised his client that a bad-conduct discharge is not in the client's best interest carries the implication that the accused's in-court request is ill-considered and may stem from immaturity or factors that may be transitory or insignificant. Thus, the information may tend to make the accused's receipt of the bad-conduct discharge he desires less likely.

*Beckwith* is distinguishable from this case in that trial defense counsel in *Beckwith* made a tactical decision to place this information before the court, and appellate courts are loath to second-guess trial tactics. Furthermore, defense counsel, without objection from the accused, elicited information that was confidential and thus privileged; under these circumstances a trial or appellate court may presume that the privilege is knowingly waived. Lastly, in *Beckwith* the military judge did not question the accused and elicit information from him that was prejudicial to his interests or desires.

We do question, without deciding, that portion of *Beckwith* that indicates that a conflict of interest does not exist when counsel elicits a statement from his client that the client's request for a punitive discharge is made contrary to counsel's advice. In general, counsel is "an advocate for his client and bound to follow the latter's instructions." *Blunk* at 424. The defense counsel must:

[G]uard the interests of the accused zealously within the bounds of the law ...; disclose to the accused any interest defense counsel *may* have in connection with the case, any disqualification, and any other matter which *might* influence the accused in the selection of counsel; represent the accused with *undivided* fidelity and may not disclose the accused's secrets or confidences except as the accused may authorize.

R.C.M. 502(d)(6), Discussion (B) (emphasis added). If the accused desires receipt of a bad-conduct discharge and directs his counsel to obtain one, counsel may not permit any perceived interest of his own to detract from his unswerving loyalty to his client to seek the result his client desires. Rule 1.7(b), RULES OF PROFESSIONAL CONDUCT, Judge Advocate General Instruction 5803.1 of 26 October 1987, states that "[a] judge advocate shall not represent a client if the representation of that client *may* be materially limited ... by the judge advocate's own interests, unless: (1) the judge advocate reasonably believes the representation will not be adversely affected; and, (2) the client consents after consultation." (Emphasis added.) If counsel elicits from his client the fact that the accused's request is contrary to counsel's advice in order to protect against a later claim of counsel's ineffectiveness or disloyalty, a conflict of interest exists unless counsel reasonably concludes that this information is in no way prejudicial to his client's interests and the potential conflict is disclosed

to the client who consents to continued representation.

■ In fact, defense counsel has no reason to risk that revealing his advice may result in a sentence that is contrary to his client's interests. Any fear that defense counsel may have of a later claim of ineffectiveness or disloyalty in acting to obtain a bad-conduct discharge for his client is easily and effectively obviated by following the procedure outlined in *Blunk*:

> [W]e believe the better practice in any case is for counsel, if he desires to protect himself against later, unjustified attack, to secure a statement in writing from his client and retain the same in his possession. In event of the accused's later disavowal of measures for which he himself is responsible, it can be made available as evidence that the allegations are in fact false....
>
> From the foregoing, it should be apparent we agree with the board of review that defense counsel erred in advising the court that accused, acting contrary to his advice, desired to present nothing in extenuation and mitigation. The matter of his instructions should have remained between him and his client until an attack was leveled at his competency and loyalty. To act otherwise was to introduce into the trial a matter which was neither material nor relevant to the single issue [an appropriate sentence] which the court had to resolve.

17 C.M.A. at 161, 37 C.M.R. at 425. The Court of Military Appeals in *Blunk* reassured trial defense counsel that the Court "would not expect any appellate attorney, as an officer of the court, to level an attack on trial defense counsel without first making inquiry of their mutual client in order to ascertain the facts." *Id.* Although *Blunk* involved a pre–1968 special court-martial tried before members without the participation of a law officer, we believe that this language is equally pertinent to trials today. We conclude that *Beckwith* constitutes no basis for a military judge to question an accused on his request for a punitive discharge, especially as it may appear to license a military judges's foray into privileged communications between counsel and accused.

In this case, no questioning of the appellant regarding his understanding of the consequences of requesting a bad-conduct discharge was necessary or desirable. Further, a substantial portion of the inquiry constituted error. We test for prejudice below.

### *Explanation of the Sentence Adjudged*

■ Immediately after announcing the sentence, the military judge explained his decision as follows: ·

> I take note that I considered your request for a BCD *and because you requested it, I granted it.* I also considered the reasons you proffered as to why you went UA and your home situation and I considered your age in awarding a sentence. You should know that, but for those reasons, the amount of time that you were absent from the military service and the fact that all three of your absences was terminated by apprehension would have ordinarily earned you a far longer, lengthier sentence to confinement. That's all I have to say.

Record at 74 (emphasis added). A punitive discharge may not be adjudged solely because an accused requests one. The request for a punitive discharge is only a factor to be considered, albeit generally a significant one, along with all other appropriate facts and circumstances before the sentencing authority. *See United States v. Cowan,* 13 M.J. 906, 909 (N.C.M.R.1982); *United States v. St. Ann,* 6 M.J. 563, 564 (N.C.M.R.1978), *petition denied,* 7 M.J. 392 (C.M.A.1979). The military judge's explanation of his sentence indicates that he adjudged a bad-conduct discharge primarily because appellant requested it and that other factors such as appellant's home situation and his age were considered only in deciding the length of confinement adjudged. We conclude, therefore, that the military judge erred in focusing unduly on appellant's request for a bad-conduct discharge in deciding to adjudge one.

## Conclusion

In determining whether the sentence must be set aside based on these errors, we must determine whether the errors resulted in material prejudice to the substantial rights of appellant. Article 59(a), UCMJ, 10 U.S.C. § 859(a). The total of his combined absences is approximately 7 months, and two of the absences were terminated by apprehension. Appellant also missed the movement of the major fleet combatant vessel to which he was attached. At his trial, which occurred on board the EISENHOWER at sea, he requested a bad-conduct discharge after expressing his understanding of the consequences of making the request. Relying on our extensive knowledge of sentences adjudged and approved in similar cases tried in the Naval Service, we find that even absent the errors noted above appellant would have received a bad-conduct discharge.

Furthermore, neither appellant nor his trial and appellate defense counsel have placed any information before this Court to indicate that appellant no longer desires the punitive separation from the Naval Service that he so clearly sought at trial. Indeed, the convening authority suspended confinement in excess of 30 days although he was only obliged by the pretrial agreement to suspend confinement in excess of 60 days. It is readily apparent that the results of this court-martial exceeded appellant's most optimistic expectations.

We therefore conclude that these errors did not prejudice any substantial right of appellant. We decline to exercise our authority under Article 66, UCMJ, 10 U.S.C. § 866, to set aside that portion of the sentence extending to a bad-conduct discharge, *see United States v. Cole*, 31 M.J. 270 (C.M.A.1990), and find the bad-conduct discharge to be appropriate.

Accordingly, the findings, as modified herein, and the sentence, as approved on review below, are affirmed.

Senior Judge JONES and Judge REED concur.