**UNITED STATES**

v.

**Peyton J. STRAUSS, 459 71 4175, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 97 00498.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 7 Nov. 1996.

Decided 22 Dec. 1997.

Capt Terri R.Z. Jacobs, USMCR, Appellate Defense Counsel.

LT E. Rubiella, JAGC, USNR, Appellate Defense Counsel.

Maj Clark R. Fleming, USMC, Appellate Government Counsel.

2dLT David B. Ashe, USMC, Appellate Government Counsel under supervision.

Before DOMBROSKI, Chief Judge, and SEFTON and OLIVER, Appellate Military Judges.

SEFTON, Judge:

We have examined the record of trial, the single assignment of error,[1] and the Government's response thereto. We conclude that the findings are correct in law and fact. With respect to the findings, we conclude that no error materially prejudicial to the substantial rights of the appellant was committed. We conclude that the sentence, which included a bad-conduct discharge, was inappropriately severe, and reassess it in our decretal paragraph.

Appellant was tried by special court-martial before a military judge sitting alone for a single specification of unauthorized absence for the period between 8 July and 10 October 1996. The unauthorized absence was terminated by the appellant's surrender. He was convicted pursuant to his provident pleas of guilty, and sentenced to a bad-conduct discharge and 28 days confinement. Appellant had served without prior disciplinary incident for more than 3 years as a rifleman and ultimately a squad leader with an infantry battalion both in CONUS and while deployed. During the sentencing proceedings, he presented no evidence beyond a short unsworn statement which contained an apology for his misconduct and a request for discharge.

■ All parties in this appeal agree that the seminal cases on the issue of whether a bad-conduct discharge is an appropriate punishment *solely* because it has been requested by an accused at trial are *United States v. Evans*, 35 M.J. 754 (N.M.C.M.R.1992); *United States v. Cowan*, 13 M.J. 906 (N.M.C.M.R. 1982); and *United States v. St. Ann*, 6 M.J. 563 (N.C.M.R.1978). While the Government has struggled mightily to avoid application of these previous holdings of this court to appellant's case, we find the effort to be in vain.[2]

The first mention in our court's precedents that a mere request for a bad-conduct discharge does not make it appropriate where it would not otherwise be so appears in the disapproval of a bad-conduct discharge as inappropriately severe in *St. Ann*, 6 M.J. at 564. This court's predecessor found that two unauthorized absences of 8 and 37 days, along with two missed movements, in violation of Articles 86 and 87, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 887 (1994)[hereinafter UCMJ], were insufficient to support a bad-conduct discharge where the accused had "an excellent past record, which includes more than 5 years of honorable service...." The court went on to state that "the accused's desire for such a [bad-conduct] discharge cannot transform an inappropriate sentence into a just penalty, if his record and offenses do not warrant a punitive discharge." *St. Ann*, 6 M.J. at 564.

The *Cowan* court enlarged somewhat on the *St. Ann* rationale, noting that "a punitive discharge should not be used as a substitute for rehabilitative measures, or, if appropriate, an administrative discharge." *Cowan*, 13 M.J. at 909. The Government argues that Petty Officer Cowan's case presented compelling circumstances militating against his punitive separation, including a previously superb performance record and the attainment of petty officer grade. We agree. However, in *Cowan*, the court was left to *presume* that the reasons for the military judge's action in imposing a punitive discharge were the attitude and request of Cowan.

In appellant's case, any question concerning the purpose and intent underlying the military judge's imposition of a bad-conduct discharge is stripped away. The military judge clearly, unequivocally, and on two separate occasions, stated that the *only* reason

1. THE MILITARY JUDGE ERRED IN ADJUDGING A BAD CONDUCT DISCHARGE BECAUSE APPELLANT'S SERVICE RECORD DOES NOT WARRANT IT AND THE SOLE BASIS FOR THE DISCHARGE WAS APPELLANT'S REQUEST FOR SUCH DISCHARGE.

2. In this regard, we are concerned that the struggle has caused the Government to misstate the evidence contained in the record and allied documents as it concerns appellant's employ as a

waiter in Austin, Texas. The Government attempts to use this employment in its argument that appellant's circumstances were not humanitarian as was the case in *Cowan*. Answer on Behalf of the Government at 3, 4. Appellant states clearly in his affidavit that such employ was entered *after* his court-martial. Affidavit of Private P.J. Strauss of 31 July 1997. Care must be taken to ensure scrupulous accuracy in all instances.

for his imposition of a bad-conduct discharge was owing to appellant's request. He first stated, "the **only reason you got a BCD is because you asked for it.**" Record at 23 (emphasis added). The sentence imposed by the military judge was essentially a bad-conduct discharge alone, since the pretrial confinement credit applied under *United States v. Allen,* 17 M.J. 126 (C.M.A.1984), was exactly the same as the confinement imposed, and neither forfeitures nor reduction were imposed. After sentencing the appellant, the military judge went on to state:

> **I'd just like to say that if you change your mind**—I have to assume that there is no rehabilitative potential because of your mindset right now, but if you do change your mind, **I will strongly recommend to the convening authority that he suspend that.** You've only got about ten months by my count left on a four year enlistment. **I frankly don't understand it. But, that's why you got the BCD.**

Record at 23–24 (emphasis added).

Appellant had served honorably and professionally for more than 3 years, progressing well in an infantry setting, and ultimately becoming a squad leader in the grade of Lance Corporal. He had participated in *Operations Native Fury* and *United Shield* as part of the Joint Task Forces. He completed a successful deployment to the Western Pacific with his infantry unit. He achieved proficiency and conduct marks averaging 4.7, which were high marks for an infantry Marine. Also, he had no prior instances of negative administrative remarks, nonjudicial punishments, or courts-martial. In short, he had done his duty, progressed to become a small-unit leader, filled a squad-leader position, and upheld the responsibilities upon him.

█ While appellant, as a young, somewhat inexperienced, and possibly headstrong junior enlisted person, is entitled to make immature decisions, even though well informed and with knowledge of their possible consequences, the military judge must sentence only based upon an assessment of the *appropriateness* of the sentence he or she imposes. Clearly, that was not the case

here. The military judge was obviously uncomfortable with the sentence he imposed, and essentially surrendered his function to comport with the wishes of appellant as he stood before the court.

Thus, we find appellant squarely within the holding of the *Evans* court, which stated that: "A punitive discharge may not be adjudged **solely** because the accused requests one. . . ." *Evans,* 35 M.J. at 761 (emphasis added). Unlike Seaman Apprentice Evans, however, appellant's case is not one where the request was the *primary* reason for the imposition of the punitive discharge (and thus caused this court to deny sentence relief)—here it was unequivocally the *only* reason for it. And, once again unlike the case before the court in *Evans,* where "neither appellant nor his trial and appellate defense counsel have placed any information before this Court to indicate that appellant no longer desires the punitive separation from the Naval Service that he so clearly sought at trial," appellant here has clearly and unequivocally indicated that his earlier position was neither sound nor lasting. *Compare Evans,* 35 M.J. at 762, *with* Affidavit of Private P.J. Strauss of 31 July 1997.

We therefore will exercise our authority under Article 66, UCMJ, 10 U.S.C. § 866, to set aside that portion of the sentence extending to a bad-conduct discharge, and find that discharge to be inappropriately severe. We further find that the imposition of a bad-conduct discharge was, under the circumstances of this case, prejudicial to the substantial rights of appellant under Article 59(a), UCMJ, 10 U.S.C. § 859(a).

Accordingly, after considering the entire record, we affirm the findings of guilty and only so much of the sentence, as approved on review below, as provides for confinement for a period of 28 days.

Chief Judge DOMBROSKI and Judge OLIVER concur.